UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VASYL PARKHOMEY,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>    Defendant. | Case No. C13-13-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Vasyl Parkhomey appeals the denial of his benefits application contending the ALJ erred by (1) misevaluating the opinions of Steven Goodman, M.D., and Diane Rubin M.D.; (2) rejecting the opinions of Bella Arshinova, PA-C, without comment; and (3) finding he could work as a "booker" at step five. Dkt. 12. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four.

## BACKGROUND

The ALJ found at **steps one, two, and three** Mr. Parkhomey last worked on October 23, 2007; that diabetes type 1, diabetic retinopathy, and diabetic peripheral neuropathy were severe impairments, and that these impairments did not meet the Listings. The ALJ found Mr.

REPORT AND RECOMMENDATION - 1

Parkhomey had the **Residual Functional Capacity** ("RFC") to do medium work; that he must avoid work requiring acute vision; that he can engage in postural movements frequently; and that he must avoid concentrated exposure to hazards (e.g., unprotected heights and dangerous moving machinery). At **steps four and five** the ALJ found Mr. Parkhomey could not perform his past work, but as there are other jobs he could perform, he was not disabled. The parties agree the ALJ's decision is the Commissioner's final decision.

**DISCUSSION**

**A.     The ALJ's evaluation of the opinions of Steven Goodman, M.D.**

In May 2008, examining doctor Steven Goodman, M.D., diagnosed Mr. Parkhomey with "diabetic retinopathy by report," "left rotator cuff tendinitis," "peripheral diabetic sensory neuropathy," and "behavioral pain syndrome." Tr. 366. Dr. Goodman opined Mr. Parkhomey could stand and walk six hours in an eight hour workday, had no sitting, manipulative or postural restrictions, did not need an assistive device, and could lift and carry 20 pounds occasionally and 10 pound frequently. *Id.* This opinion is consistent with the ability to perform light work.

The ALJ rejected this opinion finding instead Mr. Parkhomey could perform medium work. Tr. 22. The amount of weight a claimant can carry or lift differentiates the two work levels. Light work involves lifting no more than 20 pounds at a time with frequent lifting of 10 pounds, whereas medium work involves lifting no more than 50 pound at a time with frequent lifting of up to 25 pounds. *See* 20 CFR 416.967(b)(c). The ALJ discounted Dr. Goodman's lifting opinion on the grounds the doctor "appears to base his lifting limitation on the claimant's shoulder problem, which was allegedly related to a car accident." Tr. 22. The ALJ also found the record indicated this problem was temporary in nature and responded well to treatment. *Id.*

Mr. Parkhomey argues the ALJ erred because there is no evidence the doctor found Mr.

REPORT AND RECOMMENDATION - 2

Parkhomey's lifting problems were related to a shoulder injury, and that "Plaintiff's sensory neuropathy and not his shoulder problem may have been the reason for the lifting limitation." Dkt. 12 at 18.  The record does not support this argument.  Dr. Goodman stated Mr. Parkhomey's standing and walking "limitation is based on his diabetic peripheral neuropathy." Tr. 366.  His evaluation contains nothing indicating diabetic peripheral neuropathy had anything to do Mr. Parkhomey's lifting limitations.  Accordingly, the ALJ's conclusion the doctor's lifting limitations were based on the shoulder injury is reasonable, supported by the record, and will not be disturbed.

**B.     The ALJ's evaluation of the opinions of Diane Rubin, M.D.**

Reviewing doctor Diane Rubin, M.D., opined Mr. Parkhomey could occasionally push or pull with the lower extremities; that he could occasionally climb ramps and stairs, that he needed to avoid concentrated exposure to cold, wetness, and heat, and hazards; and that he was limited to occasional near far visual acuity.  Mr. Parkhomey claims the ALJ erred "when he failed to explain why he did not adopt these" findings.  Dkt. 12 at 15.  The record does not support this argument.  The ALJ discounted the doctor's findings on the grounds that:

> Dr. Rubin's opinion is supported by the overall record.  While I did not find the claimant's reported limitations to be fully credible, I considered several activities he admitted to performing in his February 2007 functional report.  He stated that he takes walks, goes to school and studies, cares for his personal and house related needs, drives and goes shopping (Ex. 2E).  He reported going to the Ukraine in February or March 2009 and had an excellent time, suggesting that he felt well enough to travel internationally on a long trip during winter (Ex. 13F).  These activities show that he could do a range of activities that requires significant walking, sitting, bending and other postural movements, seeing, lifting, pushing and pulling.  The activities also show that he is able to withstand extreme temperature.

Tr. 22-23.  These are proper grounds to discount Dr. Rubin's opinions as an ALJ may give less

REPORT AND RECOMMENDATION - 3

weight to an opinion that is inconsistent with other evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also*, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (Inconsistency between doctor's opinion and a claimant's level of daily activities can be a legitimate reason to reject doctor's opinion). Accordingly, the ALJ's evaluation of Dr. Rubin's opinions is affirmed.

**C.     The ALJ's evaluation of the opinions of Carrie Bagatell, M.D.**

The Court's scheduling order directed Mr. Parkhomey to "list, beginning on the first page, each issue plaintiff is raising, followed by a clear statement of relief requested." Dkt. 9. The order also advised Mr. Parkhomey "the court will not consider issues raised elsewhere." *Id.* Despite this admonition, Mr. Parkhomey's opening brief did not include among the issues raised a challenge to the ALJ's evaluation of Dr. Bagatell's opinions. Rather, in his Reply Brief, he claims the ALJ erred by failing to discuss Dr. Bagatell's statement that "it is incomprehensible to me that with all of his medical issues he has been turned down for SSI." Dkt. 16 at 9.

The Court rejects this claim for three reasons. First, the claim was raised in violation of the Court's order. Second, claims raised for the first time in a reply brief generally will not be considered. *See, e.g., Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1185 (9th Cir. 2001). Third, disability determinations are the exclusive province of the ALJ. Hence, the ALJ was not bound by Dr. Bagatell's disbelief that Mr. Parkhomey was turned down for SSI. *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *see also* Social Security Ruling 96–5p (ALJ need not give controlling weight or given special significance to a doctor's opinions regarding the ultimate issue of disability). Moreover, even though Dr. Bagatell expressed disbelief over the denial of SSI, Mr. Parkhomey has not contested the ALJ's findings regarding Dr. Bagatelle's treatment notes. The ALJ found the doctor's treatment notes showed Mr. Parkhomey's

symptoms "substantially decreased if he followed through on prescribed treatment. Accordingly the evidence establishes that his functional ability did significantly improve with treatment." Tr. 22. Accordingly, the ALJ's evaluation of Dr. Bagatelle's opinions is affirmed.

**C.     The ALJ's evaluation of the opinions of Bella Arshinova, PA-C**.

Ms. Arshinova, a physician assistant certified ("PA-C"), treated Mr. Parkhomey from January 2007 to December 2010. The problem with the ALJ's evaluation of Ms. Arshinov's opinions is that the ALJ did not address all of her opinions. The ALJ discounted Ms. Arshinova's April 2007 opinion that Mr. Parkhomey "was severely limited meaning that he cannot stand/walk or lift more than two pounds" on the grounds the opinion was based on an evaluation performed before Mr. Parkhomey learned to fully control his diabetes, and was inconsistent with statements Mr. Parkhomey made in 2007 in which he indicated he could lift 10 pounds and went on walks. Tr. 23. Mr. Parkhomey assigns no error to this finding.

However, Mr. Parkhomey contends the ALJ committed harmful error in failing to discuss Ms. Arshinova's December 2008 opinion that "due to severe peripheral neuropathy, patient is not able to lift, stand and [sic] other activities," and that Mr. Parkhomey is "unable to participate" in work, and he is limited to "sedentary work: Up to five (5) pounds frequently with occasional carrying of up to 10 pounds maximum." Tr. 420. As an initial matter even though Ms. Ashinova is not a medical source, her opinions are relevant evidence which the ALJ was required to consider. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (ALJ must explain why "significant, probative evidence has been rejected."); *see also* See 20 C.F.R. § 416.945(a) (ALJ must assess all relevant evidence to determine what capacity the claimant has for work).

Although the Commissioner does not argue otherwise and concedes "the ALJ did not

REPORT AND RECOMMENDATION - 5

1  discuss this opinion in particular," he nonetheless argues the ALJ should be affirmed because the
2  reasons the ALJ gave to reject Ms. Arshinova's April 2007 opinions also apply to Ms.
3  Ashinova's December 2008 opinion.  Dkt. 15 at 6.  This argument fails.  The ALJ rejected Ms.
4  Ashinova's April 2007 opinion finding it was an assessment of Mr. Parkhomey's functioning
5  before he began treatment, and because it was inconsistent with statements Mr. Parkhomey made
6  in February 2007 about his limitations.  Tr. 27.  These findings are inapplicable to the December
7  2008 opinion.  The 2008 opinion set forth Ms. Ashinova's views **after** Mr. Parkhomey received
8  treatment; hence the ALJ's pre-treatment rationale is inapplicable.  Nearly two years passed
9  between the statement Mr. Parkhomey made in February 2007 about his functioning, and Ms.
10  Ashinova's December 2008 opinion.  While it is reasonable to rely on statements Mr. Parkhomey
11  made in February 2007 regarding his functioning to undercut an inconsistent opinion given in
12  April 2007, it is unreasonable to apply those statements to an opinion rendered nearly two years
13  later.
14          Accordingly, because it is quite plain to see that the ALJ's reasons for rejecting Ms.
15  Ashinova's April 2007 opinion do not apply equally well to the December 2008, the ALJ failed
16  to provide a germane reason to reject the December opinion, and erred in failing to discuss or
17  assess the 2008 opinion.  *Cf. Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).
18          The Commissioner argues even if the ALJ erred, the error was harmless because Ms.
19  Ashinova's opinions were contradicted by more reliable evidence which the ALJ credited.  Dkt.
20  15 at 6.  This line of reasoning is based on the Ninth Circuit's discussion in *Molina*, regarding
21  whether an ALJ's failure to give individual reasons for rejecting a lay witness's material
22  testimony is per se prejudicial.  *Molina*, 674 F.3d at 1118-19.  There the Ninth Circuit in dicta
23  stated:

REPORT AND RECOMMENDATION - 6

> Molina has not suggested any basis for concluding that an ALJ's failure to discuss a lay witness's testimony expressly is likely to affect the outcome in situations where the testimony is similar to other testimony that the ALJ validly discounted, **or where the testimony is contradicted by more reliable medical evidence which the ALJ credited.**

*Id.* (emphasis added). In contrast to *Molina*, this case does not involve testimony similar to other testimony that the ALJ validly discounted. Rather, as noted above, Ms. Arshinova opined Mr. Parkhomey could not perform any work. This is an opinion which is dissimilar to the opinions of the other medical sources who found he could perform either light or medium work. *See* Tr. 22 (Steven Goodman, M.D., Christy Ulleland, M.D., and Charles Wolfe, M.D., opined Mr. Parkhomey could perform light work); Tr. 21 (Diane Rubin, M.D., opined Mr. Parkhomey could perform medium work).

      This case does, however, present an instance in which the evidence of record could reasonably be construed to contradict Ms. Arshinova's 2008 opinions. Given the record, the Court is tempted to agree with the Commissioner and find Ms. Arshinova's 2008 opinions are contradicted by the medical and other evidence of record, and that the ALJ's error in failing to discuss the 2008 opinions is harmless. The Court declines to succumb to this temptation. As the Ninth Circuit has counseled, there are several considerations which caution, if not preclude, a reviewing court from adopting the Commissioner's argument and "embrac[e] harmless error here." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "First, the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Id.* Second, the Ninth Circuit "cannot rely on independent findings of the district court," and is "constrained to review the reasons the ALJ asserts." *Id.* (*quoting Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). And third, a reviewing court "cannot affirm the decision of an agency

REPORT AND RECOMMENDATION - 7

on a ground that the agency did not invoke in making its decision." *Id.* (*quoting Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

Each of these considerations apply here. The ALJ did not discuss Ms. Ashinova's 2008 opinion or give reasons to credit or discredit it. The ALJ's failure to do so leaves the Court with a non-finding which obviously is not subject to meaningful judicial review. Worse, under these circumstances, if the Court adopted the Commissioner's approach it would be forced to based on its own interpretation of the record, make findings as to whether the record contradicted the 2008 opinion or not. Such a finding would have nothing to do with what the ALJ did below as the ALJ did not address the 2008 opinions. Rather, such a finding would be a substitute—and an impermissible one at that—for the ALJ's failure to make findings.

This is because, if a reviewing Court can make findings, in the first instance, that are normally reserved for the Commissioner, and if a Court can reverse or affirm the Commissioner based on the Court's independent assessment of the evidence and not the ALJ's determinations, the Court runs the risk of turning a review of an administrative decision on its head. Once on its head, review would focus on what the Court thinks the evidence is, not whether the Commissioner's decision is supported by substantial evidence and free of legal error; a Court could affirm or reverse the Commissioner notwithstanding what the ALJ found, or did not find; and a Court could reverse the Commissioner simply because it concludes, based on its own independent review of the record, it knows better, or feels its interpretation of the evidence is better than the ALJ's.

Accordingly, the Court rejects the Commissioner's harmless error argument. The ALJ failed to give any reason, let alone a germane reason, to discount Ms. Arshinova's 2008 opinions. The Commissioner proffers no explanation that would excuse this failure. The Court

REPORT AND RECOMMENDATION - 8

will not, and cannot, cure this failure by making its own independent determination of whether there is anything in the record which, **if** the ALJ had applied it in discussing and evaluating Ms. Arshinova's 2008 opinion, would be a legitimate basis to discount that opinion.

In sum, the Court concludes the ALJ's failure to discuss Ms. Arshinova's 2008 opinions was harmful and that the matter should be remanded. The Court also concludes further proceedings rather than benefits should be ordered. The record is not so cut and dried that the Court would be required to find Mr. Parkhomey disabled if it credited Ms. Arshinova's 2008 opinion, given the contrary medical opinions, and Mr. Parkhomey's activities. Further proceedings are necessary to sort this out and that is a determination that an ALJ should make. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (The Court should only award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose.").

### D. The ALJ's step five finding as to "booker" jobs

At step five the Commissioner bears the burden to identify a job a claimant can do that exists in significant numbers. The ALJ erred at step five by finding Mr. Parkhomey could perform light work as "booker" because there is no evidence in the record that shows such work exists in significant numbers in the national economy. *See* Dkt. 15 at 7. The Commissioner concedes error but argues it is harmless because the ALJ also found Mr. Parkhomey could perform medium work as a laundry worker. *Id*. This argument fails because as discussed above, the ALJ committed harmful error in failing to properly evaluate Ms. Arshiova's 2008 opinions, and at this point it is yet to be determined whether Mr. Parkhomey can perform light work, medium work or no work. That determination is reserved to the Commissioner and will be addressed on remand.

REPORT AND RECOMMENDATION - 9

## CONCLUSION

As discussed above, the Court recommends **REVERSING** the Commissioner's decision and **REMANDING** the matter for further administrative proceedings pursuant to sentence four. The Court affirms the ALJ's findings as to Drs. Goodman, Rubin, and Bagatelle, and as to Ms. Arshinova's 2007 opinions. Mr. Parkhomey did not assign error at steps two or three and the ALJ's findings as to those steps are affirmed. On remand, the ALJ shall assess Ms. Arshinova's December 2008 opinions and develop the record as the ALJ deems necessary and appropriate; if the ALJ makes step five findings, the ALJ shall also address the issue of whether "booker" jobs exist in significant numbers in the national economy. The ALJ is not constrained to considering only "booker" jobs and may also consider at step five whether there are other jobs that exist in significant numbers that Mr. Parkhomey could perform.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **July 8, 2013.** If no objections are filed, the matter will be ready for the Court's consideration on **July 12, 2013**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 24th day of June, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge